**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JENNA RAGLANI | : | |
| | : | |
| | : | |
| v. | : | Civil Action No. CCB-12-3682 |
| | : | |
| | : | |
| RIPKEN PROFESSIONAL BASEBALL, | : | |
| d/b/a ABERDEEN IRONBIRDS | : | |

**MEMORANDUM**

Plaintiff Jenna Raglani filed this action against her former employer, defendant Ripken

Professional Baseball ("RPB"),  under Title VII of the Civil Rights Act of 1964 and Maryland

state law. Raglani alleges that she was discriminated against and terminated because of her

gender. RPB has filed a motion to dismiss or to stay and compel arbitration, based on an

arbitration agreement with Raglani. For the reasons set forth below, the motion will be denied.

**BACKGROUND**

In July 2006, Raglani began working for RPB as an Account Representative. (Complaint

¶ 10). Raglani was successful in her position and was promoted to Assistant General Manager of

Ticket Sales in October 2010. (*Id.* ¶ 11). In 2011, Raglani entered into a romantic relationship

with a subordinate employee. (*Id.* ¶ 18). She alleges that this was not unusual, and that several

other RPB employees had engaged in sexual relationships with subordinates, despite an official

policy against such conduct. (*See id.* ¶¶ 13-18). After conducting an investigation, RPB

terminated Raglani on July 6, 2011, citing her relationship and RPB's apparent determination

that she had instructed others to lie about the relationship. (*Id.* ¶¶ 27-32). Raglani alleges that she

was treated differently from her male colleagues who engaged in similar behavior with

subordinates. (*Id.* ¶ 45). She filed a claim with the EEOC a few months after her termination and

1

received a right to sue letter on October 1, 2012. (*Id.* ¶ 4). Raglani subsequently filed this action

alleging unlawful gender discrimination, negligence, wrongful discharge, and breach of contract.

When Raglani joined RPB, she signed a Problem Support Policy ("PSP")

Acknowledgement and Agreement, which stated it was "a valid and binding legal obligation . . .

in consideration of [her] hiring for employment or [her] continued employment . . . ." (Def.'s

Mot, Ex. A.1, ECF No. 4-3). The PSP stated it was a "procedure" to be used by "[a]nyone who

feels they have a problem that requires management's attention . . . ." (Def.'s Mot., Ex. A.2

("PSP"), ECF No. 4-4, at 1). A section of the PSP entitled "Policy Application" explains that the

PSP "applies to all applicants and all team members of [RPB]" and that the "policy is meant to

deal with nearly all problems encountered by team members except where there is another

specific process in place to resolve problems (i.e., unemployment claims and benefit plan

disputes)." (PSP at 4). That section also states that "[a]ll steps  in the process will be enforced

except where prohibited by State law" and that "this policy do[es] not necessarily create any

entitlement to progressive discipline or termination only for cause. The employment relationship

is 'At Will' . . ." (*Id.*).

If an employee "team member" is not satisfied that their "problem" has been resolved at

two lower levels of procedures (that include steps for seeking assistance up the management

chain), the PSP's "Level III" is entitled "Impartial Problem Resolution" and states:

> If the problem involves a legally protected right such as protection against age,
> race, or sex discrimination and is not resolved internally . . . it may be appealed to
> Level III. Level III involves an impartial external third party and has mediation as
> the first step. If the problem cannot be mediated satisfactorily by both parties, the
> final resolution will be at the binding arbitration step.

(PSP at 2-3). The agreement then calls for mediation, stating:

> Mediation  is a non-binding step in which the problem is presented to a neutral
> third party. If a team member cannot resolve their problem internally . . . they

> must file a formal request for mediation with Human Resources. Mediation is a
> mandatory step before arbitration. Human Resources will provide a list of
> qualified Mediators from which the team member may select one. . . .

(PSP at 3). The "binding arbitration" provision in the PSP then states, in its entirety:

> If the problem cannot be resolved at the mediation step, the final step in the PSP
> is binding arbitration. Human Resources will provide a list of qualified Arbitrators
> upon a formal request to move to this step. A date will be set by the Arbitrator and
> both parties must appear on this date. The rules of the arbitration will be subject to
> the Federal Arbitration Act and agreed to by both parties. An exchange of
> information ("discovery") occurs according to requests by the Arbitrator.
> Discovery may be conducted with all three parties of Ripken Baseball at Level II:
> the immediate Supervisor, the Direct Report to the COO and the COO. Ripken
> Baseball will assume responsibility for the costs of the Arbitrator. If the team
> member decides to have their attorney present, the cost of that attorney will be the
> responsibility of the team member. After the meeting, the Arbitrator will submit a
> decision in writing and this decision shall be final.

(PSP at 3). Under a section entitled "Roles and Responsibilities[,]" the PSP states that "[t]eam

members must present their problems timely and utilize the Problem Resolution Procedure when

needed." (*Id.*). The PSP states that "Human Resources is a neutral facilitator of the process" and

that "Supervisors, Direct Reports to the COO, and the COO" must maintain an open door

communication policy, "abide by the timeframes" in the PSP, and "investigate[] fully" all

"problems." (PSP at 3-4).

The PSP contains no language suggesting that RPB has any responsibility to follow

similar procedures—or to enter into binding arbitration—for any dispute it might *initiate* against

an employee. The PSP applies only to "problems" that an employee may have with management,

not vice-versa. (PSP at 1, 4). All of the steps in the PSP are phrased as affirmative steps an

employee must take to have their problem resolved, including, for example, "submit[ting] a

Problem Support Form . . . to Human Resources." (PSP at 2). A copy of that form is attached to

the PSP and instructs only the "team member" to "fill out this form and forward to Human

Resources to begin the process." (PSP at 5). The form contains a space for only the "team member" to sign a "resolution agreement." (*Id.*)

Raglani alleges that she sought to "appeal" RPB's termination decision, as provided for in the PSP, but was rebuffed and told the decision would stand as "final." (Complaint ¶ 33). She does not allege she formally filed a problem support request form or otherwise invoked the PSP by its terms. RPB now seeks to compel arbitration of Raglani's claims, based on the PSP's arbitration provision.

## ANALYSIS

### I. Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 478 (D. Md. 2012). A petitioner must demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect[,] or refusal of the defendant to arbitrate the dispute.

*Id.* (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002)). "[C]ourts must be mindful that the FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Either a stay and order to compel arbitration or dismissal may be the appropriate remedy where a party has failed to arbitrate under a valid agreement. *Aggrao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012).

Before dismissing a suit or compelling arbitration, however, the court must determine whether the arbitration agreement that is claimed to govern the dispute between the parties is valid and enforceable. *See Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 603, 605-06 (4th Cir. 2013);[1] *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937-38 (4th Cir. 1999). Under the FAA, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Noohi*, 708 F.3d at 606 (quoting *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011)). Arbitration agreements are "unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). Thus, although the judicial inquiry is "highly circumscribed," it is focused both on ensuring there was adequate contractual formation in the agreement, including valid consideration, and that the agreement itself is not unfair, unconscionable, or otherwise defective in ensuring the claimant can "effectively . . . vindicate his or her statutory cause of action in the arbitral forum." *See Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000)); *see also Hooters*, 173 F.3d at 938. Agreements to arbitrate may not be invalidated, however, "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746.

## II. Enforceability of the PSP's Arbitration Provision

Applying these principles to the arbitration agreement RPB seeks to enforce against Raglani, the court finds that there are two independent reasons the agreement is unenforceable

---

[1] Raglani brought *Noohi* to the court's attention in a Notice of Supplemental Authority because it was decided after briefing on RPB's motion to dismiss had concluded. Neither side has asked for the opportunity to submit supplemental briefing on the issues addressed in *Noohi*, but the court must take the opinion into account when assessing RPB's motion.

and it will decline to dismiss the case or compel arbitration.[2] First, under Maryland law, the agreement is invalid for want of consideration. Second, even if it were valid, the agreement contains two defects that make it unfair and unconscionable because it denies employees access to a neutral forum.

### A. Consideration

Arbitration agreements, like all contracts, "ordinarily require consideration." *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003). Under Maryland law, and in light of the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), courts are not permitted, when assessing the enforceability of an arbitration agreement, "to go beyond the confines of the arbitration agreement itself and into an analysis of the validity of the larger contract." *Cheek*, 835 A.2d at 664. Thus, an arbitration agreement must, within its four corners, contain adequate consideration. *See Noohi*, 708 F.3d at 609 ("Under Maryland law as articulated in *Cheek*, an arbitration provision must be supported by consideration independent of the contract underlying it, namely, mutual obligation."); *see also Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543-44 (4th Cir. 2005). The PSP here, which contains the arbitration agreement between RPB and Raglani, purported to create a "binding legal obligation" on Raglani "in consideration of [her] hiring for employment or [her] continued employment . . . ." (ECF No. 4-2). But, for arbitration agreements between employers and employees, "employment or continued employment of [the employee] does not act as consideration in return for [the employee's] promise to arbitrate." *Cheek*, 835 A.2d  at 666.

---

[2] Raglani also argues that RPB breached or repudiated the arbitration agreement, and is disingenuous in attempting to enforce it now, because, after she was terminated, Raglani sought to avail herself of the PSP, which includes the arbitration agreement, and was told by her managers that RPB would not permit her to do so. (*See* Complaint ¶ 33; Pl.'s Opp., ECF No. 5, at 16-17). Because the court finds the arbitration agreement unenforceable as a whole, it will decline to decide whether RPB breached or waived the agreement.

Accordingly, the court must assess whether the agreement itself contains sufficient consideration, in the form of "a mutual exchange of promises to arbitrate." *Id.* at 665; *see also Noohi*, 708 F.3d at 601-02 (agreeing with the district court that the arbitration agreement there "lacked mutuality of consideration under Maryland law" because it only required one party, and not the other, "to submit disputes to arbitration").

    As in *Noohi*, the arbitration agreement here, standing on its own, "unambiguously" lacks mutuality of consideration. There, the Fourth Circuit agreed with the district court that the agreement was "quite simply one-sided and onerous" because it mandated that the plaintiffs (who were seeking to avoid arbitration):

> (1) submit all disputes against seller to binding arbitration, (2) notify Defendants of each claim before they initiate arbitration proceedings, (3) give Defendants a reasonable opportunity to cure the default, and (4) waive the right to proceed in a court of law. . . . Conversely, Defendants do not make any promises to Plaintiffs in this provision. The clause does not state . . . "the parties" and thus does not impose any obligations on the Defendants. It only refers to [the plaintiffs] and their obligations.

708 F.3d at 610. The PSP here suffers from precisely the same defect in consideration. The PSP's "binding arbitration" provision itself, as described above, requires only the employee to submit "problems" to arbitration. It only refers to affirmative steps employees must take to invoke arbitration. The PSP lacks any suggestion that RPB is required to submit any dispute it may have with an employee to arbitration, and contains no other potential "mutuality of obligation" between RPB and the signing "team member."

    Unlike here, in *Noohi*, the agreement lacking consideration actually stated that "any and all disputes" would be subject to arbitration, but the Fourth Circuit noted that because, as here, "all the subject and verb pairings relate to the [plaintiffs'] obligations," the  provision listed procedures only the plaintiff must follow prior to arbitration, and all the examples of claims that

might be arbitrated were likely to have been brought by the plaintiffs, the provision contained no consideration in the form of a promise by the defendants to arbitrate claims they might have wanted to bring. *Id.* at 610-11. Similarly, in *Cheek*, the arbitration agreement—which was defective because it permitted the employer, but not the employee, to modify it at any time—at least stated it applied to "all employment related disputes" and that "any party" could initiate arbitration. 835 A.2d at 142. *Hill* is also instructive. There, the Fourth Circuit upheld the enforceability of an arbitration agreement in the employment context, which the plaintiff-employee contended lacked consideration, because the governing agreement was "a specific, comprehensive document, setting forth all of the parties' rights and obligations concerning arbitration[,]" that, importantly, "on its face, unambiguously require[d] both parties to arbitrate . . . ." 412 F.3d at 544.

Here, the PSP's arbitration provision does not even contain the pretense that RPB must submit any dispute to arbitration or that claims it might seek to bring against an employee could not be immediately brought in a court of law. The PSP is entirely one-directional, binding employees to dispute resolution procedures, including, on its own, the arbitration provision, but silent on RPB's obligations to do anything other than "facilitate" this process in the event an employee submits a "problem" to management. It is unambiguously "one-sided and onerous." Under Maryland law, the PSP's arbitration provision is invalid for want of consideration and cannot be enforced.

**B. Access to a Neutral Forum**

Furthermore, even if the PSP's arbitration provision did purport to apply to both parties equally, it is defective in failing to provide a neutral forum to resolve disputes and, thus, is unenforceable under Fourth Circuit law. In general, the "defense of unconscionability may not be

applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating the agreement." *Muriithi v. Shuttle Exp., Inc.*, --- F.3d ---, 2013 WL 1287859, at *4 (4th Cir. 2013) (citing *Concepcion*, 131 S. Ct. 1746-47). Under *Concepcion*, applications of state law that "'stand as an obstacle to the accomplishment of the FAA's objectives' . . . by interfering with 'the fundamental attributes of arbitration'" may be preempted by the federal statute. *Id.* (quoting *Concepcion*, 131 S. Ct. 1748); *see also Noohi*, 708 F.3d at 611-12 (state law cannot undermine "the informality of arbitration"). But, where an arbitration agreement contains provisions that deny one party access to a neutral, arbitral forum, those provisions may make the agreement unenforceable. *See Muriithi*, 2013 WL 1287859 at *5-6 (discussing "prohibitive" arbitration costs); *Hooters*, 173 F.3d at 938-39; *Murray*, 289 F.3d at 302.[3]

Here, Raglani does not argue that the PSP's arbitration agreement is unenforceable *because* it purports to require her to arbitrate her Title VII claim. Rather, Raglani points to several provisions in the agreement that, the court agrees, undermine her access to a neutral forum to vindicate her rights. First, and most egregiously, the PSP's arbitration provision states that RPB will have exclusive control over the list of arbitrators that may be utilized. (PSP at 3). It has now long been established in this circuit that an employer may not "provid[e] itself with the exclusive right to select the list of potential arbitrators from which the ultimate decisionmaker will be selected." *Murray*, 289 F.3d at 303 (citing *Hooters*, 173 F.3d at 939). As the Fourth Circuit explained in both *Hooters* and *Murray*, an arbitration agreement is invalid where:

---

[3] Whether arbitration provisions that deny one party a neutral, fair forum are "unconscionable" under state law, *see Murray*, 289 F.3d at 302; an inherent "material[] breach" of the arbitration agreement, *see Hooters*, 173 F.3d at 938, or simply unenforceable under substantive federal arbitration law, *see Muriithi*, 2013 WL 1287859 at *5-6, is not entirely clear. Nevertheless, the governing inquiry is the same: does the arbitration agreement guarantee that a neutral arbitral forum is available to both parties?

> [The employer] is free to devise lists of partial arbitrators who have existing relationships, financial or familial, with [the employer] and its management. . . . Further, nothing in the rules restricts [the employer] from punishing arbitrators who rule against the company by removing them from the list. Given the unrestricted control that [the employer] has over the panel, the selection of an impartial decision maker would be a surprising result.

*Id.* (bracketed text in original).

RPB points out that the heading under which the arbitration provision falls in the PSP, although not the provision itself, states that it "involves an impartial external third party." (PSP at 3). This may be true (though arguably irrelevant given that the arbitration provision itself is silent on the character and selection of the list of "qualified [a]rbitrators"), but simply promising to provide a list of impartial arbitrators, without providing a mechanism by which the selection of an impartial arbitrator will actually be ensured, is insufficient. *See Murray*, 289 F.3d at 304 ("[The defendant's] argument, therefore, is little more than a claim that because [it] says it will provide a list of neutral arbitrators and abide by the ultimate arbitration decision, the selection procedure is not one-sided . . . We decline to allow [the defendant] to salvage the agreement simply . . . because it promises to act fairly in future cases.")[4]

Under the PSP, it appears that the only contemplated selection mechanism for an impartial arbitrator, if one can even be inferred, is that RPB will provide a list and the employee will "select one." (*See* PSP at 4). This is insufficient because an employee's choice is entirely circumscribed by the list RPB provides. In *Hooters*, the Circuit noted that a senior vice-president from the American Arbitration Association (AAA), in assessing the defendant's heavily criticized arbitration agreement, determined "the most serious flaw was that the mechanism for

---

[4] RPB argues that *Murray* is not controlling here because the Fourth Circuit also took issue with a provision of the agreement there that prevented an arbitrator's decision, even if it were impartial, from potentially having a binding effect on the defendant. While that was a second defect in that agreement, the Circuit's analysis largely focuses on the defendant's exclusive control of the list of arbitrators, just as the arbitration agreement provides for here.

selecting arbitrators violate[d] the most fundamental aspect of justice, namely an impartial

decision maker." 173 F.3d at 939 (quotation marks and brackets omitted). On this basis alone,

RPB's arbitration agreement with Raglani is unenforceable.

Second, and relatedly, the PSP's arbitration provision does not provide sufficient rules by

which arbitration will be conducted. While the agreement's suggestion that "[t]he rules of

arbitration will be subject to the [FAA]" (which Raglani points out does not provide for any

rules), combined with the PSP's few sentences about discovery, may have been sufficiently

enforceable if the rest of the agreement were valid, the lack of any neutral arbitrator selection

mechanism, combined with this vagueness, casts serious doubt that the agreement would

guarantee a fair process by which to arbitrate Raglani's claims. *See Murray*, 289 F.3d at 304

("The flaw in [the defendant's] argument, of course, is that there is no reference to the AAA

National Rules . . . or to any other rules . . . no doubt engendering the uncertainty and confusion

in this case."); *cf. Muriithi*, 2013 WL 1287859, at *1 (agreement calling for arbitration with the

AAA in accordance with its rules held enforceable). While the PSP's reference to the FAA might

have been intended to imply that the rules governing arbitration would be sufficient within

governing case law, and the PSP states that both parties must agree to the rules within each

dispute, this ad hoc approach appears disfavored. Although it is not necessarily an independent

basis to invalidate the agreement, certainly it is a reason to question its enforceability, when

combined with RPB's exclusive control over the list of arbitrators. Thus, even if it were

supported by mutual consideration, the arbitration agreement between RPB and Raglani would

fail because it does not sufficiently guarantee a neutral forum for RPB "team members" to arbitrate their disputes.[5]

## CONCLUSION

For the reasons stated above, RPB's motion to dismiss or stay and compel arbitration will be denied.

A separate Order follows.


April 16, 2013                              /s/_____
Date                                       Catherine C. Blake
                                           United States District Judge

---

[5] RPB argues, in the alternative, that even if the provided forum is insufficient for Raglani to arbitrate her Title VII claim, that claim should be stayed while she arbitrates her state law claims. Although Raglani suggests that different standards govern the adequacy of forums for arbitrating federal statutory claims, as opposed to other types of claims, circuit law does not appear to make such a distinction. The arbitration clause here lacks both adequate consideration and a guarantee of an adequate forum to arbitrate any of Raglani's claims, and will not be enforced.